# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:18-CV-540-KDB

| | |
|---|---|
| SAMUEL SYLVESTER MILLER )<br>      **Plaintiff,** )<br> )<br>     vs. )<br> )<br>ANDREW M. SAUL,[1] )<br>**Acting Commissioner of Social Security** )<br> )<br>      **Defendant.** )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (Doc. No. 11) and Defendant's "Motion for Summary Judgment" (Doc. No. 16), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Supplemental Social Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

## I.   PROCEDURAL HISTORY

The Court adopts the procedural history as stated in the parties' briefs.

Having exhausted his administrative remedies, Plaintiff now seeks judicial review of the decision pursuant to 42 U.S.C. § 405(g). Plaintiff filed the present action on October 5, 2018.

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff

---

[1] Andrew M. Saul is now the Commissioner of Social Security and substituted as a party pursuant to Fed. R. Civ. P. 25(d).

did not suffer from a disability as defined in the SSA. (Tr. 773).[2] In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

*Radford v. Colvin*, 734 F.3d 288, 290-91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof in the first four steps. *Pearson v. Colvin,* 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. *See id*.; *see also* 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fourth step that Plaintiff was not disabled. (Tr. 771, Finding 5).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 28, 2011 (Tr. 762, Finding 1). The ALJ found Plaintiff to have the following severe impairments: "hepatitis, paranoia, depression and schizophrenia" (Tr. 762, Finding 2). The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Administration's regulations. (Tr. 763-764). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to the Plaintiff's

---

[2] Citations to the administrative record filed by the Commissioner are designated as "Tr."

Residual Functional Capacity (RFC). In pertinent part, the ALJ found the Plaintiff:

> has the [RFC] to perform medium work as defined in 20 CFR 416.967(c) except perform simple, routine, repetitive tasks; reads on an elementary school level; perform unskilled work; non production work; no public interaction; occasional interaction with supervisors and coworkers; no complex decision-making; no crisis situations; work alone, not necessarily solitary, just not part of a team; and can stay on task for two hours at a time throughout the workday.

(Tr. 764, Finding 4). The ALJ detailed the evidence considered in formulating the RFC (Tr. 764-771). The ALJ found the Plaintiff not disabled at Step Four of the sequential evaluation process based upon the established RFC and the vocational expert's (VE) testimony that Plaintiff would be able to perform his past relevant work (PRW) as a warehouse worker. (Tr. 771, Finding 5). Alternatively, at Step Five of the evaluation process, the ALJ, pursuant to VE testimony, found Plaintiff, given the limitations embodied in his RFC, would be able to perform jobs that existed in significant numbers in the national economy such as warehouse worker, laundry worker and floor worker. (Tr. 772).

Plaintiff contends the ALJ improperly weighed the opinion of treating physician Dr. Mehta and did not fully explain the reasons for giving his opinion only "some" weight ("Plaintiff's Memorandum …" at 7-19) (Doc. No. 12).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The

District Court does not review a final decision of the Commissioner de nov*o*.  *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence.  *Hays v. Sullivan*, 907 F.2d at 1456 (4th Cir. 1990); *see also Smith v. Schweiker*, 795 F.2d at 345; and *Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below.  *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Mr. Miller became disabled at any time.[3] Mr. Miller contends the ALJ improperly weighed the opinion of treating physician Dr. Mehta and did not fully explain the reasons for giving his opinion only "some" weight ("Plaintiff's Memorandum …" at 7-19) (Doc. No. 12). This argument lacks merit, as the ALJ analyzed the opinion in accordance with the caselaw and regulations and substantial evidence supports the ALJ's evaluation of the opinion.

In weighing any medical opinion, an ALJ considers, as applicable, such factors as the examining relationship, treatment relationship, length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c). Agency regulations require that a treating source opinion be afforded controlling weight only if it is both "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). As the Court of Appeals noted in *Hines v. Barnhart*, the "[t]reating physician rule is not absolute." 453 F.3d 559, 563 (4th Cir. 2006). An "ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992) (per curiam); *see also Hines*, 453 F.3d at 563.

On April 14, 2017, Dr. Mehta opined that it was more likely than not that Mr. Miller could

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
*Pass v. Chater*, 65 F. 3d 1200, 1203 (4th Cir. 1995).

not sustain attention and concentration for at least a two-hour span due to his mental illness, that he would be off task 15% of an eight-hour workday due to his mental illness, and he would be absent two days per month due to his mental illness (Tr. 936).

The ALJ gave some weight to Dr. Mehta's opinion (Tr. 768). In so finding, the ALJ noted that the questionnaire was conclusory; that the opinion did not comport with the longitudinal record, specifically Dr. Mehta's own records; Mr. Miller testified that his condition was improving; and that the record was replete with evidence showing that Mr. Miller did well when he was compliant with medication (Tr. 768).

Mr. Miller argues that the ALJ did not properly weigh Dr. Mehta's opinion using the factors outlined in 20 C.F.R. § 416.927(c) (Pl. Br. 10-19). This argument lacks merit because the ALJ properly evaluated Dr. Mehta's opinion. Furthermore, the ALJ is not required to discuss every factor for weighing a treating physician's opinion. *See Clontz v. Astrue*, No. 2:12-cv- 00013-FDW, 2013 WL 3899507, at *7 (W.D.N.C. July 29, 2013) (finding that the regulations do not require the ALJ to specifically discuss every factor in 20 C.F.R. § 1527(c)(2)).

Mr. Miller contends that the ALJ did not consider the length and treatment relationship between himself and Dr. Mehta, the nature and extent of the treatment relationship between himself and Dr. Mehta, and that Dr. Mehta was a specialist and offered an opinion relating to his area of specialty (Pl. Br. 10-11, 17). However, the ALJ explicitly noted that Dr. Mehta was a psychiatrist who reported treating Mr. Miller for two years (Tr. 768, 936). The ALJ identified Dr. Mehta's opinion and noted that the opinion was rendered due to Mr. Miller's mental illness (Tr. 768, 936). The ALJ also considered Dr. Mehta's treatment notes, and discussed, inter alia, that Mr. Miller reported to Dr. Mehta on numerous occasions that he was okay and had no complaints (Tr. 768,

909, 911, 915, 918). The ALJ also considered the treatment records from other providers who treated Mr. Miller at Monarch, the facility where Dr. Mehta also treated Mr. Miller (Tr. 665-733, 766-67). Thus, the ALJ properly considered the relevant factors of length and treatment relationship, nature and extent of treatment relationship, and specialization. See 20 C.F.R. §§ 416.927(c)(2), 416.927(c)(5).

Mr. Miller contends that the ALJ did not consider the supportability of Dr. Mehta's opinion, arguing that the ALJ erred in finding that the opinion from Dr. Mehta was conclusory (Pl. Br. 11-12). Evidence supports the ALJ's finding that Dr. Mehta's opinion is conclusory, as the opinion consists of a form in which Dr. Mehta circled "agree" under three statements and Dr. Mehta did not provide support for these limitations (Tr. 768, 936). See 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). In the opinion, Dr. Mehta did not provide any relevant evidence to support the assessed limitations, which were identified by circling the word "agree" (Tr. 936). Thus, his opinion was not due more than some weight. *See Williams v. Colvin*, No. 1:14-cv-00018-MOC, 2015 WL 1000321, at *7 (W.D.N.C. Mar. 6, 2015) ("A conclusory checkbox form ... is entitled to little, if any, weight.") (citations omitted). Thus, the ALJ properly considered the relevant factor of supportability. See 20 C.F.R. § 4l 6.927(c)(3).

Defendant notes that Dr. Mehta's opinion was properly given only some weight because it is speculative ("it is more likely than not"). *See Guest v. Colvin*, No. 1:15-cv- 00776, 2016 WL 4007612, at *5 (M.D.N.C. July 26, 2016) ("Numerous courts have upheld the discounting of medical opinions that use equivocal terms such as 'may.'") (citations omitted).

Mr. Miller argues that the ALJ's statement that Dr. Mehta's opinion was conclusory does not consider Dr. Mehta's supportive treatment records, and that his opinion was consistent with other treatment records (Pl. Br. 12). However, the ALJ's finding that Dr. Mehta's opinion was conclusory was only one of several factors considered in giving some weight to the opinion, and the ALJ did consider Dr. Mehta's treatment notes and other treatment notes in the record that were inconsistent with Dr. Mehta' s opinion. See infra at 8-11.

Mr. Miller contends that the ALJ did not consider the consistency of Dr. Mehta's opinion with the record as a whole, and he points to evidence that he argues supports the limitations opined by Dr. Mehta (Pl. Br. 12-18). However, the ALJ explicitly noted that Dr. Mehta's opinion did not comport with the longitudinal record, specifically Dr. Mehta's treatment notes, and the ALJ noted that the record is replete with evidence showing that Mr. Miller did well when he was compliant with medication (Tr. 768). The ALJ did indicate that the opinion was not consistent with the record as whole and also that the opinion was not consistent with Dr. Mehta's treatment records. This reasoning is supported by substantial evidence, as the ALJ's decision provides a detailed discussion of medical evidence that showed greater functioning than opined by Dr. Mehta (Tr. 765-68).

For example, the ALJ considered that a mental status examination in January 2012 revealed that Mr. Miller reported that Seroquel had been helpful, and he was pleasant, cooperative, he maintained good eye contact, he engaged well, his affect was a little anxious, he reported some mild paranoia, but denied suicidal and homicidal ideation, and he had no tangential circumstantial thinking (Tr. 253, 765). In May 2012, Mr. Miller was pleasant, cooperative, he seemed calm, he was alert and oriented to his surroundings, he maintained good eye contact, his concentration and focus were fair, he had poor impulse control and had mild paranoia, but he denied auditory and

8

visual hallucinations, and he denied suicidal and homicidal ideation (Tr. 367-38, 766).

The ALJ discussed that in September 2013, Mr. Miller reported taking his medication for three weeks and that he felt more stable (Tr. 693, 766). He had some agitated motor activity, and an anxious, irritable mood, but he was oriented with an intact memory (Tr. 696-97, 766). In December 2013, his symptoms had decreased and he felt better than he did before (Tr. 733, 766). In January 15, 2014, he continued to show improvement, he reported no serious symptoms, he appeared to reap the benefits of his medication, he appeared to be in a good mood, and he had good eye contact (Tr. 668, 726, 728, 766-67). In February 2014, he reported that his symptoms continued to decrease (Tr. 719, 767). In March 2014, his mental status examination was essentially normal with no memory impairment, normal speech, and he was alert and oriented times three (Tr. 666, 766). Treatment records throughout April 2014 indicate that Mr. Miller reported that his medication was helping with his mood stability and aggression (Tr. 713, 767), he had a full affect (Tr. 712, 767), he reported that he was sleeping better and taking medications as prescribed (Tr. 712, 767), he shared no other concerns (Tr. 712, 767), he continued to have difficulty being around many people (Tr. 704, 767), he was stable (Tr. 704, 767), and his medication kept his symptoms under control (Tr. 704, 767). In May 2014, he had a labile affect and reported that he was doing well (Tr. 700, 767).

The ALJ noted that Mr. Miller participated in a client-centered, recovery-oriented mental health service for people with persistent mental illness, known as ACTT (Tr. 767). The ALJ noted that Mr. Miller reported to treatment providers at ACTT that he had auditory hallucination and feeling of anger towards others (Tr. 767, 941)  In September 2016, he was noted to be very likeable, showed a willingness to participate in ACTT services, and had a great sense of humor

9

(Tr. 768, 937).

In finding that Dr. Mehta's opinion did not comport with Dr. Mehta's treatment records, the ALJ noted that in June 2015, Mr. Miller reported that he had been okay, that he was out of Seroquel, and had no other issues (Tr. 768, 921). In November 2015, he reported that he was fine, in March 2016, he reported that he was okay, in July 2016, he reported that he had no complaints, and in September 2016, he reported that he was out of Seroquel, but had no other major symptoms (Tr. 768, 909, 911, 915, 918). Thus, Mr. Miller's own reports to Dr. Mehta did not support the limitations Dr. Mehta opined. Therefore, the ALJ properly considered the relevant factor of consistency. See 20 C.F.R. § 416.927(c)(4).

The ALJ's decision cited medical signs and findings that contradicted Dr. Mehta's opinion, and his determination was supported by substantial evidence. *Stewart v. Apfel*, No. 98-1785, 1999 WL 485862, at *5 (4th Cir. July 12, 1999) (unpublished) (even where the ALJ is "not as thorough as he could have been" in explaining the weight he afforded opinion evidence, the district court may affirm where there is substantial evidence in the record as a whole supporting the ALJ's decision). In light of this conflicting evidence, the ALJ was not required to afford Dr. Mehta's opinion controlling weight (see Pl. Br. 9). *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[I]f a physician's opinion is not supported by clinical evidence or it is inconsistent with other substantial evidence, it should be accorded significantly less weight").

Mr. Miller also argues that the ALJ relied on Dr. Mehta's notes that he was doing fine to the exclusion of the mental status examination findings and observations that show, despite medication, that his schizophrenia remained symptomatic (Pl. Br. 16). As previously discussed, the ALJ considered mental status examinations from various providers throughout the decision.

Furthermore, Dr. Mehta's treatment records indicate that while Mr. Miller did have some symptoms, many of his mental status examinations were normal. For example, mental status exams indicated that on occasion he had guarded behavior (Tr. 908-09, 911-14, 918-19), auditory hallucinations (Tr. 908-09, 912-16), poor insight and judgment (Tr. 908-09, 911-19, 922,924), anxious mood (Tr. 909, 916), and depressed mood (Tr. 922, 924). However, mental status examinations also reveal that he was alert and oriented (Tr. 908-09, 911-24), cooperative (Tr. 916-17, 920-24), he had normal speech (Tr. 908-09, 912-15, 917-18, 920-23), euthymic mood (Tr. 908, 911, 913, 915, 917, 920-21, 923), appropriate affect (Tr. 908-09, 913-17-19, 921-24), logical/linear/goal directed thought process (Tr. 908-09, 911-24), normal thought content (Tr. 908-09, 911-15, 917-24), no memory impairment (Tr. 908-09, 911-15, 919-24), fair insight and judgment (Tr. 920-21, 923), he denied delusions, suicidality,and homicidality (Tr. 908-09, 911-13, 915-24), and he denied hallucinations (Tr. 911, 915, 917-24).

Mr. Miller argues that the ALJ did not mention Dr. Mehta's mental status examinations (Pl. Br. 16-17). While the ALJ did not specifically cite to Dr. Mehta's mental status examinations, the ALJ did discuss other notations in Dr. Mehta' s treatment records, and the ALJ discussed mental status examination findings from other treatment providers in the record (Tr. 765-68). Furthermore, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Anderson v. Colvin*, No. 5:13-cv-55-RLV, 2015 WL 6394397 at *9 (W.D.N.C. 2015) ((citing *Reid v. Comm'r of Soc. Sec*., 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005)); *Black v. Apfel*, 143 F.3d 383,386 (8th Cir. 1998); *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir.2009); 224 F. App'x 574, 578 (9th Cir. 2007); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir.2009)). In addition, an ALJ's failure to cite a

specific piece of evidence is not an indication that the evidence was not considered. *Black*, 143 F.3d at 386. Here, the ALJ's decision demonstrates that the ALJ considered Dr. Mehta's treatment records (T. 768).

Mr. Miller argues that the ALJ did not explain what evidence he relied on in finding that the record was replete with evidence showing that he did well when compliant with his medication (Pl. Br. 15). However, throughout the decision, the ALJ cited to treatment records that documented Mr. Miller's mental status examinations and reports that he was taking his medication as prescribed (Tr. 765-68). For example, the ALJ discussed that in January 2012, Mr. Miller reported that Seroquel had been helpful, he was pleasant and cooperative, he maintained good eye contact, he engaged well, his affect was a little anxious, he reported some mild paranoia, but denied suicidal and homicidal ideation, and he had no tangential circumstantial thinking (Tr. 253, 765). In September 2013, Mr. Miller reported taking his medication for three weeks and that he felt more stable (Tr. 693, 766). He had some agitated motor activity, and an anxious, irritable mood, but he was oriented with an intact memory (Tr. 696-97, 766). In December 2013, his symptoms had decreased and he felt better than he did before (Tr. 733, 766). In January 15, 2014, he continued to show improvement, he reported no serious symptoms, he appeared to reap the benefits of his medication, he appeared to be in a good mood, and had good eye contact (Tr. 668, 726, 728, 766-67). In February 2014, he reported that his symptoms continued to decrease (Tr. 719, 767). In March 2014, his mental status examination was essentially normal with no memory impairment, normal speech, and he was alert and oriented times three (Tr. 666, 766). Treatment records throughout April 2014 indicated that Mr. Miller reported that his medication was helping with his mood stability and aggression (Tr. 713, 767), he had a full affect (Tr. 712, 767), he reported that

he was sleeping better and taking medications as prescribed (Tr. 712, 767), he shared no other concerns (Tr. 712, 767), he continued to have difficulty being around many people (Tr. 704, 767), he was stable (Tr. 704, 767), and his medication kept his symptoms under control (Tr. 704, 767). In May 2014, he had a labile affect and reported that he was doing well (Tr. 700, 767).

Mr. Miller argues that the ALJ's reliance on his testimony to only give some weight to Dr. Mehta's opinion is in direct contradiction to the ALJ's finding that his testimony was not supported by the objective medical evidence (Pl. Br. 26). However, both Mr. Miller's testimony at the hearing that his condition was improving, and his reports to Dr. Mehta, indicated that he was capable of a higher level of functioning than Dr. Mehta opined (Tr. 700, 704, 712-13, 841, 936). Further, any error in the ALJ's reliance on Mr. Miller's testimony to reject Dr. Mehta's opinion would be harmless because, as previously discussed, the ALJ properly provided other reasons for only giving some weight to Dr. Mehta's opinion. See supra at 6-10. Administrative adjudications, including those of the Commissioner, are subject to a harmless error rule in which reversal on account of error requires a determination of prejudice. *See Shinseki v. Sanders*, 556 U.S. 396, 497-10 (2009); *Bishop v. Comm'r of Soc. Sec*., 583 F.App'x 65, 67 (4th Cir. 2014) ("[A]ny error is reviewed under the harmless error doctrine."). The burden is on the party claiming error to demonstrate not only the error, but that prejudice resulted. *Shinseki*, 556 U.S. at 409-10.

Mr. Miller argues that the ALJ offered no explanation as to why the opinions of the State agency psychological consultants were worthy of significant weight, while the opinion from Dr. Mehta was entitled to some weight (Pl. Br. 18). However, as previously discussed, the ALJ provided several reasons that are supported by substantial evidence for according some weight to Dr. Mehta's opinion. See supra at 6-10.

Furthermore, the ALJ's evaluation of the State agency psychological consultant opinion from Dr. Ben Williams is supported by substantial evidence (Tr. 92-94, 771). Dr. Williams opined that Mr. Miller was able to sustain sufficient attention to complete simple, routine, repetitive tasks for extended periods, he could accept directions from a supervisor and maintain adequate relationships with co-workers, it was doubtful that he could adapt to working with the public, and he would have difficulty adapting to change but would be able to function with a stable work assignment (Tr. 92-94). The ALJ noted that this opinion was consistent with and supported by the medical evidence (Tr. 92-94, 771). In addition, the agency's regulations specifically provide that the final responsibility for determining RFC and disability lies with the ALJ. See 20 C.F.R. § 416.946; see also 20 C.F.R. §§ 416.927(d)(2), 416.945(a)(3). The issue, then, is whether the ALJ properly weighed Dr. Mehta's opinion. For the reasons enumerated above, the ALJ did so.

Finally, Mr. Miller argues that if he were limited as opined by Dr. Mehta that he would be disabled because the VE testified that an individual would not be able to sustain work if they could not sustain attention and concentration for two hour intervals, if they were off task fifteen percent of the time, and if they were absent two days per month (Pl. Br. 20-21). However, as discussed above, substantial evidence supports the ALJ's evaluation of Dr. Mehta's opinion and the evidence of record does not support a finding that Mr. Miller is as limited as opined by Dr. Mehta. As the ALJ expressly gave some weight to Dr. Mehta's opinion and substantial evidence supports the ALJ's finding, the ALJ was not required to credit VE testimony premised on limitations that were not supported by the record. *See McFalls v. Astrue*, No. 3:09-cv-53 l, 2011 WL 4565474, at *3 (W.D.N.C. Sept. 29, 2011) (unpublished) (finding that the ALJ was not required to find that plaintiff was disabled based on the vocational expert's answer to counsel's hypothetical that

14

included additional limitations not found by the ALJ).

The ALJ sufficiently made clear the reasons for affording Dr. Mehta's opinion some weight, and the Court should not reweigh the evidence. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (on substantial evidence review, the Court cannot "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]"). Accordingly, substantial evidence supports the ALJ's evaluation of Dr. Mehta's opinion.

## IV. CONCLUSION

For these reasons, Plaintiff's "Motion for Summary Judgment" (Doc. No. 11) is **DENIED**; Defendant's "Motion for Summary Judgment" (Doc. No. 16) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

Signed: December 5, 2019

Kenneth D. Bell
United States District Judge